## Com. ex rel., Appellant, v. McAfee.

*Elections—Alderman—City of Pittsburgh—Consolidation—Expiration of term—Act of April 24, 1905, P. L. 307.*

The cities of Pittsburgh and Allegheny were consolidated under the Act of February 7, 1906, P. L. 7. Prior to the consolidation, Pittsburgh had 44 and Allegheny 15 wards. In 1908 these old wards were abolished and the united city was divided into 27 new wards created pursuant to the Act of April 24, 1905, P. L. 307 which provides in Sec. 4 that "All aldermen ...... shall continue in office until the expiration of the terms for which they have been elected." A person was chosen an alderman in 1906 by the electors of an old ward, which, after the consolidation, became a part of the new third ward of the City of Pittsburgh and his term, by virtue of the Constitutional Amendments of 1909, expired on the first Monday of December, 1911. At the election in November, 1911, he was a candidate for a new term of five years, to commence on the day of the expiration of his former term, and he received a majority of the votes cast. At the time of the consolidation, there were three aldermen in commission within the limits of the new third ward of the City of Pittsburgh, of whom

the terms of two were to expire in May, 1912 and the term of the other was not to expire until May, 1913. Article V, Sec. XI, of the Constitution, provides that aldermen shall be elected in the several wards by the qualified electors thereof, and then directs as follows: "No person shall be elected to such office unless he shall have resided within the ...... ward ...... for one year next preceding his election. In cities containing over fifty thousand inhabitants, not more than one alderman shall be elected in each ward." *Held,* (1) that there was no authority for attempting to elect an alderman for the new third ward of the City of Pittsburgh at the general election in November, 1911, and that the candidate referred to was not then lawfully elected to the said office; and (2) that the Act of March 2, 1911, P. L. 8, did not authorize or require the holding of an election for alderman in the ward in question on November 7, 1911.

Argued May 20, 1912. Appeal, No. 6, May T., 1912, by plaintiff, from judgment of C. P. Dauphin Co., No. 3, Commonwealth Docket, 1912, vacating writ of mandamus in the case of Commonwealth of Pennsylvania, ex rel., Heber McDowell, appellant, v. Robert McAfee, Secretary of the Commonwealth of Pennsylvania. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Mandamus proceedings directed against the Secretary of the Commonwealth to compel him to lay the returns of the relator's election before the Governor so that a commission to him as alderman might issue.

The opinion of the Supreme Court states the case.

*Error assigned* was in dismissing the petition.

*Charles B. Prichard,* for appellant, cited: McDowell v. Allegheny County, 59 Pitts. Leg. J. 603; Com., ex rel., Barrett v. McAfee, 232 Pa. 36.

*William M. Hargest,* Assistant Deputy Attorney General, with him *John C. Bell,* Attorney General, for appellee, cited: Etters v. McAfee, 229 Pa. 315; Walsh v. Com. 89 Pa. 419; James v. Commissioners of Bucks

Co., 13 Pa. 72; Easton Boro. v. Lehigh Water Co., 97 Pa. 554.

OPINION BY MR. JUSTICE MOSCHZISKER, July 2, 1912:

Prior to the consolidation of the cities of Pittsburgh and Allegheny under the Act of February 7, 1906, P. L. 7, the former had 44 and the latter 15 wards. In 1908, these old wards were abolished and the united city was divided into 27 new wards, created pursuant to the Act of April 24, 1905, P. L. 307, which provides in Sec. 4 that "all aldermen ...... of the ward or wards affected by the creation, division or consolidation ...... shall continue in office until the expiration of the terms for which they have been elected." Article V, Sec. II, of the Constitution, provides that aldermen shall be elected in the several wards by the qualified electors thereof, and then directs as follows: "No person shall be elected to such office unless he shall have resided within the ...... ward ...... for one year next preceding his election. In cities containing over fifty thousand inhabitants not more than one alderman shall be elected in each ward."

The relator was chosen an alderman in 1906, by the electors of an old ward which now forms a part of the present Third ward of the City of Pittsburgh, and his term, by virtue of the constitutional amendments of 1909, expired on the first Monday of December, 1911. At the November election of that year, he was a candidate for a new term of five years to commence on the day of the expiration of his former term, and he received a majority of the votes cast; but the court below decided that "there was no authority for attempting to elect an alderman in the Third ward of the City of Pittsburgh at the general election in November, 1911, and said relator was not then lawfully elected to the said office," and entered an order that "the writ of alternative mandamus heretofore granted to therefore now vacated." This is assigned for error.

No matter how this case may be viewed, it will be found to contain inherent difficulties. But after study and consideration we conclude that the learned court below fell into no error when it refused the relief asked by the relator; and since we adopt the view of the law entertained by that tribunal, we cannot do better than quote from its opinion. It is there well said: "The Constitution clearly contemplates that there shall be but one alderman in each ward. ...... At the time of the consolidation of the wards of the City of Pittsburgh, as above stated, there were three aldermen in commission within the limits of the new Third ward, to wit, Heber McDowell, whose term was to expire in May, 1912, and Samuel Frankel, whose term was to expire in May, 1912, and Louis Alpern, whose term was to expire in May, 1913. Under the provisions of the Act of April 24, 1905, P. L. 307, these three aldermen are all continued in office until the expiration of their respective terms. Their terms being fixed by the Constitution, could not be lessened by the legislature, and therefore this provision was written in the Act of 1905. The result is that the Third ward had three aldermen within its limits at the time of its creation. ...... It was undoubtedly the intention of the legislature that there should be no election or appointment of an alderman in this ward until by reason of the expiration of the terms of the aldermen in commission at the time of the creation of the ward, the number was reduced to constitutional limit of one. It is conceded that the term of Alderman Alpern continued until May, 1913, and until the expiration of this term, the ward is assured of its constitutional number of aldermen. ...... The attempt to elect an alderman in this ward at the general election on November 7, 1911, appears to us to have been without any authority of law. No act of the legislature can increase the constitutional number of aldermen in any ward. ...... It is contended, however, that the Act of March 2, 1911, P. L. 8, authorized and re-

quired the holding of an election for alderman in the ward in question on November 7, 1911. In our opinion this act does not aid the relator in any way."

We cannot accept the view contended for by the appellant to the effect that the law, while permitting all the old officers to serve out their terms, created a vacancy and required an alderman to be elected immediately upon the erection of the present Third ward. If such were the case, there would be a similar vacancy in each of the other new wards of the united city, and with the aldermen continuing in office, this would give the citizens of Pittsburgh 86 aldermen distributed over 27 wards. Neither the Constitution nor the legislation upon the subject contemplates or requires a construction that would countenance such a situation.

The assignment of error is overruled and the judgment of the court below is affirmed.